**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **File No. 5:21-mj-8 (CHW)** |
| | **:** | |
| **WILLIAM McCALL CALHOUN, JR.,** | **:** | **Charging District's Case No:** |
| | **:** | **1:21-mj-40 (D.D.C.)** |
| **Defendant.** | **:** | |
| _____ | **:** | |

## ORDER OF DETENTION

On January 21, 2021, arrestee William McCall Calhoun, Jr., appeared before the Court for a preliminary hearing pursuant to Rule 5.1 of the Federal Rules of Criminal Procedure and a hearing on the Government's motion for detention. Defendant is charged in a complaint with unlawful entry in a restricted building, in violation of 18 U.S.C. § 1752(a); violent entry and disorderly conduct in the Capitol building, in violation of 40 U.S.C. § 5104(e)(2); and obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). Following the preliminary hearing, the Court found probable cause to support each of the allegations in the complaint.

Based on the testimony presented by the Government at the preliminary and detention hearing, the Court further found by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of the community and by a preponderance of the evidence that no condition or combination of conditions of release would reasonably assure the Defendant's appearance as required.

1

Most significant in the Court's consideration under 18 U.S.C. § 3142(g) is the nature of the offenses alleged, as the offenses involve credible threats of violence against political opponents and intentional participation in violent civil insurrection. The Government showed that the weight of the evidence is likely to be strong and indicates an ongoing and escalating pattern of threats and threatening behavior culminating in the violent entry of a mob on the United States Capitol.

Evidence presented by the Government showed that Defendant made a series of violent and threatening statements on social media, including threats to "storm" Washington, D.C., and wage a civil war against political opponents whom he described as Democrats, communists, the Deep State, and BLM-Antifa. Defendant took action on those threats by participating, intentionally and with premeditation, in the violent riot that led to the takeover of the United States Capitol Building on January 6, 2021.

The Government produced evidence of numerous social media posts between October 2020 and January 2021, indicating Defendant's intent to wage a "civil war" and "slaughter" Democrats and other political opponents. Among Defendant's threats were statements such as: "I have tons of ammo. Gonna use it, too - at the range and on racist democrat communists" (Govt. Ex. 12); "we're loading AR15 magazines and getting range time in. My AR15 set up will do head shots at 200 meters no problem. You have no clue what's coming" (Govt. Ex. 13); "For my part, I'll be slinging enough hot lead to stack you commies up like cordwood" (Govt. Ex. 14); "War is coming. It's the only way to deal with our domestic Communist problem. Ruthlessness is in order" (Govt. Ex. 15); "The only

2

remedy for BLM-Antifa communism is violent retribution against the media and the democrats." (Govt. Ex. 18). These statements also included direct threats to other social media users, including the statement to one user, "You won't be laughing when Patriots go door to door executing you commies" (Govt. Ex. 27), and to another user, "I won't struggle pulling a head shot at 200 meters day or night. Smoke that over commie bitch." (Govt. Ex. 23).

Prior to the Capitol riot on January 6, 2021, Defendant made clear his desire and intent to invade the Capitol building. On October 20, 2020, Defendant posted the statement, "Patriots be ready to storm Washington! If you're willing to go to Washington in November to 'peacefully protest' with AR15 in hand, upvote this." (Govt. Ex. 19). On January 5, 2021, Defendant posted that he was "Headed to D.C. to give the GOP some back bone," and noted that "DC announced it is 'banning guns' when we storm the Capitol tomorrow. LoL - guns are already banned in DC. Very illegal. Whether the police can enforce their gun laws depends on how many armed Patriots show up." (Govt. Ex. 3). Shortly before the mob entered the Capitol, Defendant posted a picture from outside the Capitol with the statement, "We're going to get inside the Capitol before this ends." (Govt. Ex. 4).

After entering the Capitol with the mob, Defendant continued to make a number of social media posts describing the "hostile takeover" of the Capitol. He also explained his intent and the intent of the mob to do harm to members of Congress:

After we had overrun that last police barricade, the momentum caused a bad crush at one point, but carried the Vanguard through several smaller doors and down halls as we swarmed Congress yelling the names of various members.

Then we stormed upstairs through the rotunda admiring the amazing art work but at the same time looking for members of Congress, as by this time we physically owned the Capitol - all law enforcement had retreated to the perimeter and even more thousands were trying to push in!

And get this - the first of us who got upstairs kicked in Nancy Pelosi's office door and pushed down the hall towards her inner sanctum, the mob howling with rage – Crazy Nancy probably would have been torn into little pieces, but she was nowhere to be seen – then a swat team showed, and we retreated back to the rotunda and continued our hostile take over of the Capitol Building.

(Govt. Ex. 5)

In another post from inside the Capitol, Defendant boasted:

Today the American People proved that we have the power.

We physically took control of the Capital [*sic*] building in a hand to hand hostile takeover.

We occupied the Capitol and shut down the Government – we shut down their stolen election shenanigans.

I was there and saw it all. My buddy Andy Nalley and I were in the first two

4

hundred to rush up the steps and inside after the Vanguard had clashed hard with the police and had made them retreat.

The military isn't going to save the Democrat Communists. They are done.

Today we brought the Government to its knees with no weapons.

Now we're all going back armed for war and the Deep State is about to get run out of DC.

(Govt. Ex. 6)

Following the Capitol riot, Defendant returned to his home in Americus, Georgia, where he continued to engage in the practice of law and represent clients at court hearings. Defendant also gave an interview to the Atlanta Journal-Constitution, in which he admitted to being one of the first to enter the Capitol. Federal agents sought to arrest Defendant at a scheduled court hearing in Americus, but Defendant failed to appear. Defendant was able to evade surveillance and relocate to Macon, Georgia, where he was eventually located at his sister's house. At the time of his arrest, Defendant possessed several weapons, including at least two AR15 rifles, four shotguns, a pistol, a set of brass knuckles, and hundreds of rounds of ammunition.

The evidence presented by the Government is sufficient to show by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person or the community. The evidence further shows by a preponderance of the evidence that no condition or combination of conditions

of release will reasonably assure the Defendant's appearance as required. Defendant made numerous statements indicating his intent to engage in a violent insurrection and "slaughter" people he considered his political opponents. Defendant showed that his intentions were more than mere fantasies when he participated in the violent invasion of the United States Capitol during a joint session of Congress to certify the results of a national election, an invasion that resulted in the deaths of five people, including one law enforcement officer. Defendant indicated that he intended to participate in further, armed acts of violence. At the time of his arrest, Defendant was evading law enforcement and was heavily armed.

Accordingly, the Defendant shall be committed to the custody of the Attorney General of the United States or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED, this the 25th day of January, 2021.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

6